IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TD BANK, N.A., successor by merger with COMMERCE BANK/PENNSYLVANIA, N.A., | : : : : | |
| Plaintiff, | : : | CIVIL ACTION NO. 14-136 |
| v. | : : | |
| BNB PROPERTIES, LLC, JOCELYN PROPERTIES, INC., and CONSTRUCTION & DESIGN, INC., | : : : : | |
| Defendants. | : | |

## **MEMORANDUM OPINION**

Smith, J.                                                                                                                      June 10, 2015

In normal course, issues concerning the execution of a judgment, such as the fixing of priorities, are raised in supplementary postjudgment proceedings. This mortgage foreclosure action has proceeded along a slightly different path in part because it originally began in state court. The complaint filed there identified three defendants pursuant to the Pennsylvania Rules of Civil Procedure. One of those defendants, Construction & Design, Inc. ("CDI"), responded to the complaint by filing a counterclaim seeking to preclude the plaintiff from asserting priority in any execution proceedings. This court deferred ruling on the priority issue pending resolution of the merits of the underlying foreclosure.

After obtaining a default judgment against the defendants, BNB Properties, LLC ("BNB") and Jocelyn Properties, Inc. ("Jocelyn"), with respect to the foreclosure, the plaintiff now moves for summary judgment on CDI's counterclaim. For the reasons that follow, the court grants the motion because the plaintiff is a *bona fide* purchaser entitled to the protection of Pennsylvania's recording statute.

# I. PROCEDURAL HISTORY

The court has previously set forth the procedural history of this matter on multiple occasions. *See* Tr. of Hr'g on Mot. for Default J. at 14-17, 25-27, Doc. No. 78; Tr. of Hr'g on Mots. at 3-4, 19-21, Doc. No. 80. As such, the court recounts that history here only to the extent that it bears upon the resolution of the instant summary judgment motion.

The plaintiff, TD Bank, N.A., successor by merger with Commerce Bank/Pennsylvania, N.A., commenced this action by filing a complaint against the defendants on August 21, 2013, in the Court of Common Pleas of Montgomery County. Doc. No. 1. CDI filed an answer to the complaint with new matter and a counterclaim on September 30, 2013. *Id.* BNB and Jocelyn filed a notice of removal on January 10, 2014. *Id.* After removal, the plaintiff filed an amended reply to new matter and an answer to CDI's counterclaim. Doc. No. 33.

After holding an evidentiary hearing on September 24, 2014, the court entered a default judgment in favor of the plaintiff and against BNB and Jocelyn based on their repeated failure to obtain licensed counsel.[1] Doc. No. 53. The plaintiff filed a motion for summary judgment on CDI's counterclaim, a supporting brief, and accompanying evidentiary materials on April 30, 2015. Doc. No. 83. It filed a statement of material facts and additional evidentiary materials on May 6, 2015. Doc. No. 85. CDI filed a responsive brief, accompanying evidentiary materials, and a counter-statement of facts on May 14, 2015. Doc. No. 86. It also filed a statement of additional facts precluding summary judgment on May 17, 2015. Doc. No. 87. The court held oral argument on the summary judgment motion on May 18, 2015.

---

[1] The court certified this judgment as a partial final judgment under Federal Rule of Civil Procedure 54(b). *Id.* After the court denied BNB and Jocelyn's motion for relief pursuant to Federal Rule of Civil Procedure 60(b) on November 21, 2014, they filed a notice of appeal on December 19, 2014, seeking appellate review of, among other things, the default judgment. Doc. Nos. 68, 72. Neither this court nor the Third Circuit has stayed the execution of the judgment. That appeal is currently pending before the Third Circuit.

## II. DISCUSSION[2]

### A. <u>Factual Record</u>[3]

CDI, a construction company specializing in commercial and industrial renovations, commenced an action ("2002 action") against Jocelyn and Koresko & Associates on February 8, 2002, in the Court of Common Pleas of Montgomery County, seeking damages in connection with work that CDI allegedly performed at 204-212 West Fourth Street, Bridgeport, Pennsylvania (the "Property"). *See* Separate Statement of Undisputed Facts as Recited in Pl.'s Mot. for Summ. J. ("Pl.'s Statement") at ¶¶ 1-2, Doc. No. 85; Resp. to Facts Asserted as Undisputed on Mot. for Summ. J. ("CDI's Resp.") at ¶¶ 1-2, Doc. No. 86-5. One week later, CDI filed a mechanic's lien against the Property under a separate docket number. *See* Pl.'s Statement at ¶ 3; CDI's Resp. at ¶ 3. The Honorable Arthur R. Tilson entered an order on March 19, 2002, striking the lien from the records.[4] *See* Pl.'s Statement at ¶ 3; CDI's Resp. at ¶ 3.

The parties maintain that Jocelyn had become the owner of the Property pursuant to a special warranty deed granted by First States Properties No. 16, LLC on April 1, 2000, and recorded on March 12, 2002. *See* Pl.'s Statement at ¶ 4; CDI's Resp. at ¶ 4. After becoming the owner of the Property, Jocelyn granted a mortgage and security agreement in favor of BNB, said

---

[2] The court has an independent jurisdictional basis over this priority dispute pursuant to 28 U.S.C. § 1332 as complete diversity is present and the amount in controversy exceeds $75,000. *See* Tr. of Hr'g on Mot. for Default J. at 29-35 (determining that complete diversity exists). Although this dispute materialized early on in this litigation, the court notes the possibility of viewing it as part of a supplementary execution proceeding over which the court would also have ancillary jurisdiction. *See Peacock v. Thomas*, 516 U.S. 349, 356 (1996) (confirming the availability of ancillary jurisdiction "over a broad range of supplementary proceedings involving third parties to assist in the protection and enforcement of federal judgments" (citations omitted)).

[3] The material facts are largely undisputed and are taken from the plaintiff's statement of facts and CDI's counter-statement of facts. *See* Doc. Nos. 85, 86-5. In the event of a dispute, the court views "the facts in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Dinote v. Danberg*, No. 14-3158, 2015 WL 451639, at *2 (3d Cir. Feb. 4, 2015) (internal quotation marks and citation omitted).

As previously stated, CDI also filed a separate statement of additional facts precluding summary judgment. Doc. No. 87. To the extent that these facts duplicate those found in CDI's counter-statement of facts, the court incorporates them into the factual record. To the extent that they differ, and as explained later, the court need not consult them because they are rendered immaterial by the controlling substantive law.

[4] The plaintiff and CDI appear to agree that the order was dated April 1, 2002. *See* Pl.'s Statement at ¶ 3; CDI's Resp. at ¶ 3. The order itself is dated March 19, 2002. *See* Order at Ex. B., Doc. No. 83-4.

mortgage and agreement having been recorded on June 11, 2002, in the Montgomery County Recorder of Deeds Office. *See* Pl.'s Statement at ¶ 5; CDI's Resp. at ¶ 5. John Koresko, acting in his capacity as president of Koresko & Associates, P.C., executed the mortgage on behalf of Jocelyn as an attorney-in-fact via a power of attorney. *See* Pl.'s Statement at ¶ 6; CDI's Resp. at ¶ 6. In turn, Jocelyn granted a deed-in-lieu of foreclosure to BNB, said deed having been recorded on June 19, 2002. *See* Pl.'s Statement at ¶ 7; CDI's Resp. at ¶ 7.

Before the mortgage had even been recorded, two key events had taken place. First, Mr. Koresko had filed a certificate of organization for BNB with the Pennsylvania Corporation Bureau on June 10, 2002. *See* Pl.'s Statement at ¶ 7; CDI's Resp. at ¶ 7. Second, Jocelyn had, in fact, executed the mortgage in favor of BNB on December 1, 2001, approximately six months prior to both the recording of the mortgage and the filing of BNB's certificate of organization. *See* Pl.'s Statement at ¶ 7; CDI's Resp. at ¶ 7.

Mr. Koresko had approached Commerce Bank, the plaintiff's predecessor, in early 2002 regarding refinancing the Property. *See* Pl.'s Statement at ¶ 8; CDI's Resp. at ¶ 8. Mr. Koresko had been a customer of Commerce Bank since August 1995. *See* CDI's Resp. at ¶ 9. Eventually, Commerce Bank approved a loan in the name of Jocelyn as the borrower. *See* Pl.'s Statement at ¶ 9; CDI's Resp. at ¶ 9. At that time, Jocelyn was the title holder of record with respect to the Property. *See* Pl.'s Statement at ¶ 9; CDI's Resp. at ¶ 9. Prior to closing, Mr. Koresko requested that Commerce Bank change the name of the borrower from Jocelyn to BNB due to purported issues regarding estate planning. *See* Pl.'s Statement at ¶ 10; CDI's Resp. at ¶ 10. BNB granted a mortgage to Commerce Bank on July 2, 2002, in the amount of $800,000. *See* Pl.'s Statement at ¶ 11; CDI's Resp. at ¶ 11. Mr. Koresko acted as an approved attorney for

the closing, which was handled by Penn Title Attorneys. *See* Pl.'s Statement at ¶ 12; CDI's Resp. at ¶ 12.

Approximately four years after the initiation of the 2002 action, CDI commenced a second action ("2006 action") against BNB and Jocelyn on May 16, 2006, in the Court of Common Pleas of Montgomery County, seeking a determination that the aforementioned deed-in-lieu from Jocelyn to BNB was fraudulent as to CDI. *See* Pl.'s Statement at ¶ 13; CDI's Resp. at ¶ 13. CDI neither named Commerce Bank as a party in this action nor filed a *lis pendens*. *See* Pl.'s Statement at ¶ 14; CDI's Resp. at ¶ 14. Commerce Bank had no involvement with the 2006 action. *See* Pl.'s Statement at ¶ 14; CDI's Resp. at ¶ 14. Following a non-jury trial, the Honorable S. Gerald Corso entered a judgment on September 4, 2007, in favor of BNB and Jocelyn and against CDI with respect to the 2006 action. *See* Pl.'s Statement at ¶ 15; CDI's Resp. at ¶ 15. In the same order, Judge Corso also entered a judgment in the 2002 action denying all of the relief requested by CDI and awarding Jocelyn and Koresko & Associates damages in the amount of $24,000. *See* Pl.'s Statement at ¶ 15; CDI's Resp. at ¶ 15.

The Superior Court of Pennsylvania ultimately vacated those judgments and remanded the case for further proceedings.[5] *See* Pl.'s Statement at ¶ 16; CDI's Resp. at ¶ 16. Thereafter, the Honorable Calvin S. Drayer, Jr. entered an order on November 18, 2009, with respect to the 2006 action finding that the conveyance of the Property from Jocelyn to BNB was fraudulent as to CDI. *See* Pl.'s Statement at ¶ 16; CDI's Resp. at ¶ 16. On that same day, Judge Drayer entered a judgment in the 2002 action in favor of CDI and against Jocelyn in the amount of $184,716 based on an unjust enrichment theory. *See* Pl.'s Statement at ¶ 17; CDI's Resp. at ¶ 17.

---

[5] The plaintiff's statement of facts indicates that "the Pennsylvania Superior Court reversed and remanded the case back to the trial court." *See* Pl.'s Statement at ¶ 16. Without the benefit of a full state court record, and given the later activity in the trial court, the court presumes that the Superior Court vacated the September 4, 2007 judgments.

Counsel for CDI notified the plaintiff on March 29, 2011, for the first time, that CDI was a creditor of Jocelyn and that Judge Drayer had entered an order declaring both the mortgage from Jocelyn to BNB and the deed-in-lieu fraudulent as to CDI. *See* Pl.'s Statement at ¶ 18; CDI's Resp. at ¶ 18. At that time, counsel for CDI neither questioned the validity of the plaintiff's mortgage nor made claim to a superior interest in the Property. *See* Pl.'s Statement at ¶ 18; CDI's Resp. at ¶ 18. CDI, though, had been aware of the Commerce loan since 2006. *See* Pl.'s Statement at ¶ 20; CDI's Resp. at ¶ 20.

### B. Standard – Motion for Summary Judgment

A district court "shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Additionally, "[s]ummary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Wright v. Corning,* 679 F.3d 101, 105 (3d Cir. 2012) (quoting *Orsatti v. New Jersey State Police,* 71 F.3d 480, 482 (3d Cir. 1995)). An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

The party moving for summary judgment has the initial burden "of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). Where the movant bears the

burden of proof at trial, it "must show that it has produced enough evidence to support the findings of fact necessary to win." *El v. Southeastern Pa. Transp. Auth. (SEPTA)*, 479 F.3d 232, 237 (3d Cir. 2007) (citations omitted).  Once the moving party has met this burden, the non-moving party must counter with "'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (citation omitted); *see* Fed. R. Civ. P. 56(c)(1) (stating that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . .; or . . . [by] showing that the materials cited do not establish the absence . . . of a genuine dispute").

### C. <u>Analysis</u>

Guided by the parties' framing of the relevant legal questions, the court may resolve this priority dispute by determining whether the plaintiff is a *bona fide* purchaser.[6]  This determination is significant because the plaintiff, if in fact a *bona fide* purchaser, is entitled to take advantage of Pennsylvania's recording statute, which, in turn, gives "a subsequent *bona fide* purchaser for value . . . priority over the equitable estate of the first owner." *Long John Silver's, Inc. v. Fiore*, 386 A.2d 569, 573 (Pa. Super. 1978) (emphasis added) (citation omitted).  Although both parties recognize the stakes underlying this determination, they dispute the nature of the preconditions necessary to achieve *bona fide* purchaser status.  The court, then, sets out the principles governing this status before situating those principles within the factual context of this case.

---

[6] The parties appear to be in agreement that CDI may not claim a superior interest in the Property if the plaintiff is a *bona fide* purchaser.  *See* Mem. of Law in Supp. of Pl.'s Mot. for Summ. J. Against Def. Construction & Design, Inc. ("Pl.'s Mem. of Law") at 17-20, Doc. No. 83-2; Mem. of Construction & Design, Inc. in Opp'n to Mot. for Summ. J. Filed by TD Bank, N.A. ("CDI's Mem. of Law") at 7, 18, Doc. No. 86.  Indeed, CDI's responsive brief is devoted entirely to refuting the idea that the plaintiff is such a purchaser.  *See* CDI's Mem. of Law at 6-18.  Because the court ultimately concludes that the plaintiff is a *bona fide* purchaser, the court need not address any ancillary arguments.

7

The Pennsylvania recording statute provides in full:

> All deeds, conveyances, contracts, and other instruments of writing wherein it shall be the intention of the parties executing the same to grant, bargain, sell, and convey any lands, tenements, or hereditaments situate in this Commonwealth, upon being acknowledged by the parties executing the same or proved in the manner provided by the laws of this Commonwealth, shall be recorded in the office for the recording of deeds in the county where such lands, tenements, and hereditaments are situate. Every such deed, conveyance, contract, or other instrument of writing which shall not be acknowledged or proved and recorded, as aforesaid, shall be adjudged fraudulent and void as to any subsequent *bona fide* purchaser or mortgagee or holder of any judgment, duly entered in the prothonotary's office of the county in which the lands, tenements, or hereditaments are situate, without actual or constructive notice unless such deed, conveyance, contract, or instrument of writing shall be recorded, as aforesaid, before the recording of the deed or conveyance or the entry of the judgment under which such subsequent purchaser, mortgagee, or judgment creditor shall claim. Nothing contained in this act shall be construed to repeal or modify any law providing for the lien of purchase money mortgages.

21 Pa. C.S. § 351 (emphasis added). The protection afforded by this statute means that "a *bona fide* purchaser for value without notice takes clear of any interest that was violated by the sale." *In re Graves*, 33 F.3d 242, 251 (3d Cir. 1994) (emphasis added) (citations omitted) (applying Pennsylvania law). To put it differently, "a *bona fide* purchaser for value and without notice has a perfect defense in a suit brought by a holder of a prior equitable claim."[7] *MacKubbin v. Rosedale Mem'l Park, Inc.*, 257 A.2d 587, 589 (Pa. 1969) (emphasis added) (footnotes and citations omitted).

---

[7] The plaintiff pleaded *bona fide* purchaser status as an affirmative defense to CDI's counterclaim. *See* Pl.'s Am. Reply to New Matter and Answer to Def. Construction & Design, Inc.'s Countercl. with Affirmative Defenses at Second Affirmative Defense, Doc. No. 33. In line with the general principle that the party asserting an affirmative defense bears the burden of pleading and proving it, it would appear that the plaintiff would have the burden of proving *bona fide* purchaser status at trial. To that end, one can find the following unqualified statement in Pennsylvania caselaw: "[a] person claiming to be a *bona fide* purchaser for value has the burden of establishing such before receiving the commensurate protections that such status affords." *Hoyt v. Christoforou*, 692 A.2d 217, 224 (Pa. Super. 1997) (emphasis added) (citation omitted).

One can, however, also find the following: "[t]he burden of proving notice is upon the party asserting unrecorded rights in the property." *Carnegie Natural Gas Co. v. Braddock*, 597 A.2d 285, 288 (Pa. Commw. 1991) (citation omitted). The court need not engage the possible tension between these cases because the precise allocation of the burden is not outcome determinative. In other words, the plaintiff here is entitled to summary judgment even if it bears the burden of proving lack of notice.

8

This statutory protection comes into play, however, "*only if* the subsequent purchaser took the property for value and without notice of any defect in title." *In re Fowler*, 425 B.R. 157, 196 (Bankr. E.D. Pa. 2010) (emphasis in original) (citations omitted) (applying Pennsylvania law). That is, "[a] *bona fide* purchaser is defined as one who pays valuable consideration, has no notice of outstanding rights of others, and acts in good faith." *Braddock*, 597 A.2d at 288 (emphasis added) (citation omitted). "Either actual or constructive notice is sufficient to prevent the subsequent purchaser from acquiring the status of a *bona fide* purchaser." *Long John Silver's*, 386 A.2d at 573 (emphasis added) (citation omitted). In terms of constructive notice, subsequent purchasers are charged with knowledge of that which "they could have learned by inquiry of the person in possession and of others who, they had reason to believe, knew of facts which might affect the title." *Sidle v. Kaufman*, 29 A.2d 77, 82 (Pa. 1942) (internal quotation marks and citations omitted).

Applying this general framework to this case requires the court to take a more careful look at the lack-of-notice requirement. As framed by the parties, whether the plaintiff is entitled to summary judgment turns on whether it can affirmatively prove that there is no genuine issue of material fact as to this requirement. As previously stated, the parties agree on a majority of the facts. Should they comprise the entirety of the *material* facts, the plaintiff is entitled to judgment as a matter of law.

At first blush, and given that a *bona fide* purchaser is one who lacks notice of either a defect in title or of outstanding rights of others, it is rather difficult to understand the plaintiff as anything other than such a purchaser in relation to CDI. At the time that the plaintiff (actually Commerce Bank) received the mortgage from BNB, the undisputed facts reveal that CDI did not have a legal interest in the Property within the meaning of the above framework—that is, an

9

interest recognized by law as capable of depriving a purchaser of *bona fide* purchaser status upon notice.  Although CDI commenced the 2002 action prior to the execution of the plaintiff's mortgage, that action did not result in a judgment until years later.  The only other action of potential relevance, namely the action involving the mechanic's lien, culminated in a March 19, 2002 order striking the lien from the records.  In sum, CDI simply did not possess a cognizable legal interest in the Property at the time of the execution of the mortgage in question that the plaintiff could have possibly taken notice of.

CDI has, though, offered additional facts that it contends have the capacity to preclude the entry of summary judgment.  *See* Additional Facts Precluding Summ. J. (Complete), Doc. No. 87.  These facts aim to do one of three overlapping things: (1) show that the plaintiff was aware not only of the 2002 action and the mechanic's lien, but also of Mr. Koresko's attempt to commit fraud against CDI; (2) show that Mr. Koresko acted as an agent of the plaintiff; and (3) show that the plaintiff acted in bad faith.  Whether these facts actually preclude summary judgment turns on whether they are material.  And whether they are material requires the court to return to the substantive law.  The balance of this opinion takes up these legal and factual considerations.

CDI first argues that the plaintiff is not a *bona fide* purchaser because it was on notice of Mr. Koresko's actions in relation to CDI in general and of the 2002 action and the mechanic's lien in particular.  *See* CDI's Mem. of Law at 12-15, 17.  Given the above legal principles, it is difficult to see why this matters under Pennsylvania law.  The doctrine of *lis pendens* proves instructive in this regard.  The purpose of the doctrine is "to give notice to third persons that . . . real estate is subject to litigation and that any interest which they may acquire in the real estate will be subject to the result of the action."  *Psaki v. Ferrari*, 546 A.2d 1127, 1128 (Pa. Super.

1988) (citation omitted). By negative implication, the existence of this doctrine undercuts CDI's suggestion that the mere filing of a lawsuit, without more, can provide the notice necessary to deprive a purchaser of *bona fide* purchaser status. To add force to this observation, "a party is not entitled to have his case indexed as *lis pendens* unless title to real estate is involved in litigation." *Id.* (emphasis added). Thus, there are some cases, the 2002 action being one of them, the filing of which could not provide the necessary notice even if a party took active steps to have the case indexed.

Here, CDI concedes that it did not have the 2002 action indexed as *lis pendens*. *See* CDI's Mem. of Law at 17. Indeed, it appears that CDI could not have had that action indexed even if it so desired because the action sought solely monetary relief. The only document of record, then, is the mechanic's lien that had been stricken. But just as "purchasers must be entitled to rely on the decisions of . . . courts when they remove a *lis pendens*," so too must they be entitled to rely on decisions that remove something like a mechanic's lien. *Janus Mgmt. Servs., Inc. v. Schlessinger*, 810 A.2d 637, 641 (Pa. Super. 2002). And allowing general knowledge of Mr. Koresko's actions in relation to CDI, and especially in relation to a lawsuit that did not involve property rights, to defeat *bona fide* purchaser status seems even more unacceptable than condoning the "absurd result" of requiring "a prospective buyer to make a factual and legal determination regarding a pending lawsuit [potentially involving property rights] to which he is not a party." *Id.* at 642.

CDI next maintains that the plaintiff is not entitled to *bona fide* purchaser status because Mr. Koresko was the plaintiff's agent. That is, CDI argues that the "Bank knew what Koresko knew" and, therefore, the plaintiff was on actual notice that BNB received title to the Property for the purpose of frustrating CDI's claims. *See* CDI's Mem. of Law at 12-14. Again, unless the

11

notice pertained to a legal interest that CDI had in the Property, Mr. Koresko's imputed knowledge is immaterial. Actual or constructive notice of outstanding *rights* is what matters under Pennsylvania law. The fact that CDI speaks of notice of its claims only emphasizes that it did not possess a judgment at the time that the plaintiff received the mortgage from BNB. It is a judgment, however, that "becomes a lien, without more, on real estate which is owned by the judgment debtor." *Psaki*, 546 A.2d at 1128 (citations omitted).

Finally, CDI asserts that the plaintiff is not a *bona fide* purchaser because it did not act in good faith when obtaining the mortgage from BNB. *See* CDI's Mem. of Law at 7, 16. Presumably, CDI fixates on this concept because the test for *bona fide* purchaser status sometimes makes mention of a requirement of good faith. *See Carnegie Natural Gas Co. v. Braddock*, 597 A.2d 285, 288 (Pa. Commw. 1991) (observing that a *bona fide* purchaser "is defined as one who pays valuable consideration, has no notice of outstanding rights of others, *and acts in good faith*" (emphasis added) (citation omitted)). Unfortunately, it is far from clear that the good faith requirement possesses any independent content beyond the notice requirement. Take, for example, *Long John Silver's, Inc. v. Fiore*, 386 A.2d 569 (Pa. Super. 1978)—a case recognized by both parties. There, the Superior Court did not reference an independent good-faith requirement and instead focused exclusively on the concept of notice. *See id.* at 572-75. To the extent that an inquiry into good faith collapses into an inquiry into notice, the court has already explained why this is insufficient to defeat summary judgment.

This result would not change even if Pennsylvania law did recognize a good-faith requirement independent of the notice requirement. In *Janus Management Services, Inc. v. Schlessinger*, 810 A.2d 637 (Pa. Super. 2002), the Superior Court stated that "there may be circumstances where a buyer has actual knowledge of, or is an active participant in, fraud and

12

therefore cannot assume the status of a *bona fide* purchaser." *Id.* at 643. Taken in isolation, this statement might give CDI's argument some force. But the statement must be read in context. The actual holding in *Janus* was as follows:

> We hold that it is not enough to know that there is a *claim* against a property to disqualify one from being a *bona fide* purchaser for value. When two courts deny a *lis pendens,* and the underlying complaint has been dismissed, unless the buyer has actual knowledge of the *merit* of the claim against the property, he is free to take clear title.

*Id.* at 638-39. The above statement is therefore best understood as carving out a situation where a purchaser cannot rely on a decision striking a *lis pendens* because he or she has actual knowledge that the underlying claim *against a property* is meritorious. *See id.* at 639-41. This situation is simply not implicated on the facts of this case because it is undisputed that the 2002 action did not involve the adjudication of property rights. If anything, and as applied to this case, *Janus* suggests that Pennsylvania courts are reluctant to use something like a good-faith requirement to upset the stability engendered by the doctrine of *lis pendens* and its concomitant implications. The court respects this reluctance as a federal court sitting in diversity. CDI's additional facts, therefore, are immaterial and summary judgment is appropriate based on the undisputed material facts.

### III. CONCLUSION

As this opinion highlights, the law regarding the fixing of priorities contains some tensions and uncertainties. The undisputed facts of this case, however, present no occasion to pass upon those tensions or uncertainties. Because those facts entitle the plaintiff to judgment as a matter of law, the court grants the instant summary judgment motion and enters judgment in favor of the plaintiff on CDI's counterclaim.

An appropriate order follows.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.